UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FIDEL ARELLANO, et al.,<br>Plaintiffs,<br>v.<br>COLLIGERE FARM MANAGEMENT COMPANY, et al.,<br>Defendants | No. 2:24-cv-1793 SCR<br><br>ORDER |

This action concerns alleged violations of labor laws by an agricultural labor provider. Before the Court is the plaintiffs' motion for class certification. ECF No. 17. After a hearing on the motion, and for the reasons set forth below, the motion is granted as to all but one of the proposed subclasses.

## I. RELEVANT BACKGROUND

A. Complaint

The Complaint, filed June 26, 2024, asserts that the three proposed representative plaintiffs – Fidel Arellano ("F. Arellano"), Anabel Nataren, and Lucio Alvarez (the "Representative Plaintiffs" or "Plaintiffs") – were employed by Defendant Colligere Farm Management Company in San Joaquin County during the relevant period. ECF No. 1 at 3-4. The Complaint alleges that Defendant paid these employees and the proposed class members via a "piece-rate" system, but without using a formula that separately compensated for rest periods or

nonproductive time as required by California law. ECF No. 1 at 8 (citing *Bluford v. Safeway Stores, Inc.*, 216 Cal.App.4th 864, 871 (Cal. Ct. App. 2013)). This resulted in a failure to accurately calculate pay for rest and recovery periods, and to record and compensate employees for nonproductive time as a whole. ECF No. 1 at 7. The Complaint's second claim therefore asserts a violation of California Labor Code § 226.2. *Id.* at 14-15. The fourth claim further contends that Defendant's manner of compensation resulted in a general failure to pay minimum wages for all hours worked, in violation of California Labor Code §§ 1194, 1194.2, and 1197. *Id.* at 18-19. The fifth claim similarly alleges a failure to pay premium overtime wages under California Labor Code §§ 510, 1194, and 1194.2 because of the complete absence of a timekeeping system for nonproductive hours. *Id.* at 19-20.

The Complaint's third claim, raised under California Labor Code §§ 226.7 and 512, asserts that Defendant failed to provide an uninterrupted 30-minute meal period for any shift exceeding five hours, or alternatively to pay one hour of wages at the regular rate of pay in exchange for the lack of such a meal period. *Id.* at 7, 16-17.

Taken together, the wage and hour violations alleged in the second through fifth claims resulted in a miscalculation of the wages owed upon an employee's separation, and therefore a failure to pay them under California Labor Code §§ 201-203. *Id.* at 20-21. They also resulted in a failure to provide accurate itemized wage statements throughout any class member's employment, which under California Labor Code §§ 226 and 226.2 must include all hours worked and wages earned based on the applicable hourly rates. *Id.* at 22-23.

These allegations also collectively support the first claim, under the Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801, *et seq.*, based on a general failure to comply with Industrial Welfare Commission ("IWC") Wage Orders pertaining to minimum wage, overtime premium wage, recordkeeping practices, the provision of meal periods; and application of penalties. ECF No. 1 at 13-14. Similarly, the general failure to comply with wage and hour laws allegedly violates California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* ECF No. 1 at 24-25. Finally, the Representative Plaintiffs informed the Labor & Workforce Development Agency ("LWDA") of these violations and never received confirmation

that the LWDA would investigate. ECF No. 1 at 27. Plaintiffs therefore exercise their right as aggrieved employees to bring this action on behalf of all similarly aggrieved employees and the State of California under the California Private Attorneys General Act ("PAGA") and California Labor Code §§ 558, 558.1, and 2698, *et seq.* ECF No. 1 at 26-27.

In addition to class certification, Plaintiffs seek compensatory, statutory, economic, and special damages, including unpaid wages; declaratory judgment that Defendant's conduct violated the AWPA, the UCL, various sections of the California Labor Code, and IWC Wage Orders; actual damages or $500 in statutory damages per class member, whichever is greater, as recoverable under the AWPA; disgorgement of profits as per the UCL; an injunction enjoining the continuance of practices found to violate the Labor Code or the UCL; and attorney's fees and costs. ECF No. 1 at 30-31.

B. <u>Subsequent Procedural History</u>

The parties consented to the undersigned presiding over trial and final judgment in this matter. ECF No. 11. On November 25, 2024, following a pretrial scheduling conference, the undersigned issued a scheduling order that set discovery deadlines—which have now expired—and a pretrial conference date of September 10, 2026. ECF No. 15 at 2-3.

Representative Plaintiffs moved for class certification on May 28, 2026. ECF No. 17. Defendant filed an opposition to that motion, and Representative Plaintiffs filed a late reply and a request to consider the late filing. ECF Nos. 20, 22-23. The Court finds the delay excusable and will consider the reply.

The Court heard the motion on October 1, 2026.

## II. LEGAL STANDARD

Class action litigation is "an exception to the usual rule" that only individual named parties bring and conduct lawsuits. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (citation and internal quotation marks omitted). Only if a class action "promot[es] ... efficiency and economy of litigation," should a motion for certification be granted. *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). In evaluating a motion for class certification, a court considers whether class litigation promotes "economies of time, effort, and expense, and ...

uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Fed. R. Civ. P. 23(b)(3) advisor committee's note to 1966 amendment.

Class certification is governed by Federal Rule of Civil Procedure 23. "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "[I]t is well established that for purposes of class certification, the moving party does not need to establish a likelihood of prevailing on the merits." *McKenzie v. Fed. Exp. Corp.*, 275 F.R.D. 290, 297 (C.D. Cal. 2011). Under Rule 23(c)(5), for purposes of certification, a subclass is treated exactly like a class. To be certified, the party seeking certification "bears the burden of demonstrating" that the requirements of Rule 23(a) and one of the subsections of Rule 23(b), which defines three types of classes, are met. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).

Rule 23(a)'s prerequisites are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). These requirements are referred to as numerosity, commonality, typicality, and adequacy. *See In re Live Concert Antitrust Litig.*, 247 F.R.D. 98, 105 (C.D. Cal. 2007). Once subdivision (a) is satisfied, the party seeking certification must demonstrate that the action falls into one of three categories under Rule 23(b). *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 153 (N.D. Cal. 1991).

Rule 23 embodies more than a "mere pleading standard." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. The moving party must "prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* The court must verify the putative class's "actual, not presumed, conformance with Rule 23(a)[.]" *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This inquiry may overlap with consideration of the merits of the plaintiffs' substantive claims. *Wal-Mart Stores, Inc.*, 564 U.S. at 351-52. Indeed, "a district court must consider the

merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

## III. ANALYSIS

Plaintiffs seek certification of both a "Global Class" and various subclasses within that broader class. Defendant contracted with Central Valley Farming ("CVF"), a farm labor contractor, for Plaintiffs and proposed class members' labor during the relevant time period. ECF No. 17 at 7. The "Global Class" would consist of every non-exempt CVF agricultural employee who performed work for Defendant on or after June 26, 2020. ECF No. 17 at 2. The "Unpaid Overtime Subclass" would consist of any class member who was not paid overtime despite working more than 5 days per workweek after June 26, 2021. *Id.* The "Underpaid Piece-Rate Rest Period Subclass" includes any class member who worked a piece-rate shift of 3.5 hours or more and was undercompensated for rest periods therein since June 26, 2020. *Id.* The "Short, Incomplete, or Missed Meal Period Subclass" included any class member who worked at least one shift exceeding five hours from June 26, 2020. *Id.* The "Minimum Wage Subclass" includes any class member who was not compensated separately for nonproductive time spent on duty since June 26, 2020. *Id.* The "Final Wages Subclass" includes any class member who quit, was laid off, or was discharged after June 26, 2021 but did not receive all wages they were still owed, including due to the wage and hour violations that define the other subclasses. *Id.* Finally, the "Violation of Unfair Competition Law Subclass" ("UCL Subclass") includes any class members who, from June 26, 2020, was subject to unfair labor practices. *Id.* at 2-3. Aside from the wage and hour violations underlying the other subclasses, this includes any deductions from wages that violated California Labor Code § 221. *Id.*

### 1. Requirements Under Rule 23(a)

#### a. Numerosity

Fed. R. Civ. P. 23(a)(1) provides that numerosity exists if "the class is so numerous that joinder of all members is impracticable." The primary records Plaintiffs cite in their motion are Ranch Reports and Crew Sheets that CVF provided Defendant Colligere, who then produced such information in this action. ECF No. 17 at 7; ECF Nos. 17-3, 17-4. Based on these documents,

Plaintiffs have identified 103 employees that would be part of the Global Class; 53 members of the Unpaid Overtime Subclass; 66 members of the Underpaid Piece-Rate Rest Period Subclass; 100 members of the Short, Incomplete, or Missed Meal Period Subclass; 69 members of the Minimum Wage Subclass; and 103 members of the UCL Subclass. ECF No. 17 at 7-8, 16. Because CVF has ceased operations, Plaintiffs argue that all 103 employees in the Global Class would also qualify for the Final Wages Subclass. *Id.* at 7, 16.

Defendant raises several arguments regarding the use of CVF records to support the motion for class certification as a whole. It first argues that these records are inadmissible because they have not been properly authenticated and lack foundation. ECF No. 19 at 2. This is in part because efforts to subpoena CVF—which is reportedly now defunct—have failed. *Id.* However, "at the class certification stage, a district court need only consider material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement," and "the court's consideration should not be limited to only admissible evidence." *In re JUUL Labs, Inc., Marketing Sales Practices and Products Liability Litigation*, 609 F.Supp.3d 942, 1004 (N.D. Cal. 2022) (citing *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1004 (9th Cir. 2018) (cleaned up); *see also Longest v. Green Tree Servicing, LLC*, 308 F.R.D. 310, 317 n.2 (C.D. Cal. 2015) ("Because the court makes no findings of fact and announces no ultimate conclusions on a motion for class certification, the Federal Rules of Evidence are not stringently applied on such a motion.") (quotations omitted).[1] Given that the Ranch Reports and Crew Sheets are the best documentary source of information concerning Defendant's labor practices, the Court will consider those documents when adjudicating the instant motion.

This does not preclude arguments as to whether the evidence is persuasive, and Defendant does note several inconsistencies in Plaintiffs' factual presentation. ECF No. 19 at 4. For example, Plaintiff F. Arellano testified to working six eight-hour days per week, but the records

[1] Nonetheless, "[w]hen conducting its 'rigorous analysis' into whether the Rule 23(a) requirements are met, the district court need not dispense with the standards of admissibility entirely. The court may consider whether the plaintiff's proof is, or will likely lead to, admissible evidence." *Sali*, 909 F.3d at 1006. As to the Ranch Reports and Crew Sheets, it is far from clear at this point that Plaintiff will not be able to lay a foundation as to their authenticity and otherwise show that they should be admitted as evidence at trial.

show this was only true for one of the three weeks he worked. ECF No. 19 at 4 (citing ECF No. 17-3 at 12, 16; 1-4 at 5-7). He also asserted in his declaration that he was paid by the piece and was surprised when others claimed he was paid hourly, but CVF timesheets show that his pay was calculated based on an hourly rate. ECF No. 19 at 4 (citing ECF No. 17-3 at 12-16; 17-6 at 4). Meanwhile, two different paystubs show that Jose Arellano, a putative class member, was paid two different amounts for the October 19-24, 2020 workweek, and both contradict his assertion that he worked only one day that week. ECF No. 19 at 4 (ECF No. 17-3 at 12; ECF No. 17-4 at 7; ECF No. 17-6 at 33-34).

Plaintiffs respond that when employers fail to keep accurate records, the burden should fall on the employer to the extent that the failure makes it impossible to obtain the evidence needed. ECF No. 21 at 4. They cite *Hernandez v. Mendoza*, where the appellate court reversed the decision to grant the motion for judgment in the employer's favor. *Id.* (citing 199 Cal. App. 3d 721, 723-4 (Cal. Ct. App. 1988)). The employee in that case was unable to provide evidence as to how much overtime his employers owed him, but this was in part because the time cards for that period were "clearly made up" by Defendants. *Id.* at 724-25. California's Second District Court of Appeal held that penalizing the employee for not obtaining adequate evidence of time worked, when the employer's records to that effect were inaccurate, "would place a premium on an employer's failure to keep proper records in conformity with his statutory duty[.]" *Id.* at 727 (quoting *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 687, 687-88 (1946)). Vacating the trial court's judgment was consistent with the principle that "[a]lthough the employee has the burden of proving that he performed work for which he was not compensated, public policy prohibits making that burden an impossible hurdle for the employee." *Hernandez*, 199 Cal. App. 3d at 727.

Plaintiffs further note that California Labor Code § 1695.55 requires labor contractors like CVF to provide payroll records for each farmworker so provided, and a grower like Defendant to retain those records for at least three years after the contract has ended. ECF No. 21 at 4. Plaintiffs argue that § 1695.55 was passed at the same time as section 2810.3, which made the contractor and grower jointly liable for wages owed to workers, so workers could obtain the records needed to prove a client grower's liability thereunder, as in this case. ECF No. 21 at 4-5.

Based on this authority, the Court agrees with Plaintiffs that inaccuracies in the Crew Sheets and Ranch Reports should not be held against Plaintiff for class certification purposes. Critically, although Defendant argues that it did not generate or prepare the CVF Crew Sheets and Ranch Reports (ECF Nos. 19 at 2, 19-2 at 2), it does not dispute that it produced the copies that Plaintiffs now submit with this motion (ECF No. 17-1 at 9). Defendant also admits that it contracted with CVF in spring and summer of 2021, September and December of 2022, and March of 2023. ECF No. 19-2 at 2. As this action was filed in June 2024 (ECF No. 1), Defendant was legally obligated to preserve at least some of these records. Nor does Defendant explain how else Plaintiffs could obtain this information in light of CVF's failure to respond to the subpoena. *See* ECF No. 19 at 2. To what extent the crew sheets are accurate as to each class member, and therefore what damages each member may be owed if Defendant's liability is shown, is an issue reserved for adjudication of the merits.

As to numerosity in particular, Defendant argues that of the 123 names listed on the Crew Sheets, contact information is only available for 47. ECF No. 19 at 3, 10. This miscasts the numerosity requirement and its relation to the ascertainability of said class members. The definition of a class or subclass must be "definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member" once such an individual is identified. *O'Connor v. Boeing North American*, 184 F.R.D. 311, 319 (C.D. Cal. 1998). Whether the parties have sufficient information to attempt to contact any particular class member at the time of class certification is a separate issue, and should not be used to reduce the class size. The lack of contact information for potential class members does not affect numerosity.

Plaintiff has adequately met the numerosity requirement as to the Global Class and each subclass.

b. <u>Commonality</u>

Commonality exists when "there are questions of law or fact common to the class," even if not every such question is common or identical. Fed. R. Civ. P. 23(a)(2); *Hanlon v. Chrysler*

////

////

*Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).[2] Defendants first argue this does not apply as to any subclass based on failure to pay wages owed because Plaintiffs have failed to establish a common policy or practice underlying this failure. ECF No. 19 at 9-10. They argue that of the five declarations attached to the class certification motion, the only two declarants to allege that they were not paid wages for work performed are not Plaintiffs in this action. ECF No. 19 at 10 (citing ECF No. 17-6 at 26, 43).

As Plaintiffs argue, the failure to pay wages owed upon separation includes the failure to accurately calculate and provide minimum wage, overtime, compensation for rest and meal periods, and nonproductive time whenever employees were otherwise provided piece-rate compensation. ECF No. 1 at 20; ECF No. 21 at 8. Every declarant has asserted a failure to pay amounts owed, including wages for time spent on tool maintenance or pre-picking preparation when working on a piece-rate basis (ECF No. 17-6 at 3, 13, 24, 57), overtime when working more than 40 hours per week (ECF No. 17-6 at 13, 23, 43), premium for missed rest breaks (ECF No. 17-6 at 44, 58), and change over the nearest whole dollar after cashing their paychecks at the one location they were required to use for that purpose (ECF No. 17-6 at 4-5, 14-15, 26).

Plaintiffs' expert has also analyzed the CVF Ranch Reports and Crew Sheets and concluded that these problems persisted among the proposed class. The expert identifies 53 employees who worked overtime and did not receive overtime pay. ECF No. 17-2 at 14. No meal periods were recorded for the 1,343 shifts exceeding five hours, affecting 100 employees. ECF No. 17-2 at 15. Rest pay was either not provided or underpaid in 72 of the 172 shifts exceeding 3.5 hours were pay was at a piece rate. ECF No. 17-2 at 15-16.

Defendants argue that understanding why these violations occurred requires an individualized inquiry. ECF No. 19 at 10. This argument fails for two reasons. First, when records that an employer is legally required to maintain show a wage or hour violation, the

---

[2] Plaintiff miscites *Amchem Products, Inc. v. Windsor* as requiring that the questions common to the class predominate over questions unique to different class members. ECF No. 17 at 16; 521 U.S. 591, 609 (1997). This is only a requirement of Rule 23(b)(3), and the Court considers it after the prerequisites under Rule 23(a) are met. *Id.* Although Plaintiffs seek certification under Rule 23(b)(3) (*see* ECF No. 27 at 19), this is a separate inquiry. *See infra* III.B.

employer must provide evidence to rebut the presumption that such a violation did in fact occur. *See Donohue v. AMN Services, LLC*, 11 Cal.5th 58, 74-76 (Cal. 2021). Defendant must overcome this presumption for every class member for which the CVF Crew Sheets suggest such a violation occurred. The arguments made for each subclass likely would apply equally to all members therein.

Second, the primary inquiry that would be unique to each worker is how much they are owed for each labor violation. This is the case for almost all wage-and-hour class actions and does not in itself mean that individual questions dominate over common ones. *See Levya v. Medline Indus., Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013).

As to the Short, Incomplete, or Missed Meal Period Subclass, Alvarez, F. Arrellano, Jose Arellano, and Moises Rocha also asserted that there was pressure to work without breaks, such that they rarely took a full 30-minute meal break and were never compensated for missed meal breaks. ECF No. 17-6 at 3, 14, 25, 57. Defendant argues that this means that putative class members were at least aware they could take a 30-minute meal period, and sometimes did. ECF No. 19 at 10. Defendant concludes that because whether a class member took this break seemed to depend on which supervisors were on duty and what work needed to be done, Plaintiffs have failed to show that there is a policy or practice affecting every member of this subclass. *Id.*

This does not entirely eliminate the inquiry unifying the subclass. No labor violation exists when "an employee voluntarily chooses to work during a meal period after the employer has relieved the employee of all duty." *Donohue*, 11 Cal.5th at 67 (citation omitted). There is one, however, if the employer "undermine[s] a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks." *Id.* (quotation omitted). The common question becomes whether Defendant was responsible for supervisors pressuring employees to work during their breaks, whether by having a policy that condoned it or not mentioning meal periods to class members at all.

Plaintiffs have adequately met the commonality requirement for each subclass.

c. Typicality

Typicality requires that "the claims or defenses of the representative parties are typical of

the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). As such, it substantially overlaps with the test for commonality. For typicality to be met, named plaintiffs' claims must be "reasonably coextensive" with the claims of the putative class, but not necessarily identical to them. *Hanlon*, 150 F.3d at 1020. The inquiry focuses on the claims themselves, not on the factual predicates from which the claims arise. *Hanon*, 976 F.2d at 508. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.*

The only subclass for which Defendant argues this is not the case is the Underpaid Piece-Rate Rest Period Subclass. ECF No. 19 at 9. The Court agrees. At best, F. Arrellano claims that he believed he was paid on a piece-rate basis at some of the farms, and that he was pressured to work without breaks when he did. ECF No. 17-6 at 3-4. Yet even Plaintiffs' expert notes that the CVF Ranch Reports list all of F. Arellano's shifts as being paid hourly. ECF No. 17-2 at 16. The expert also reported that although Plaintiff Lucio Alvarez did work exclusively piece-rate shifts, "the correct amount of compensable rest break time was calculated for" him. *Id.* The expert did not find any records for Plaintiff Nataren, nor did she submit a declaration in support of class certification.

None of the Plaintiffs can raise claims typical of the Underpaid Piece-Rate Rest Period Subclass. This requirement is met for all other subclasses and the Global Class.

d. <u>Adequacy of Representation</u>

Adequacy of representation requires that "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). For plaintiffs to adequately represent the putative class members, they must demonstrate, first, that they do not possess any conflicts of interest with the class members and, second, that both plaintiffs and their counsel will work to "prosecute the action vigorously" with respect to the entire class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiffs, like the putative class members, are workers who were employed through CVF to work at Defendant's affiliated farms. They have no conflict of interest in raising the same

wage and hour claims as other former CVF employees. Nor does Defendant provide any reason to believe that Plaintiffs' counsel will not vigorously prosecute this action, particularly as the firm Mallison & Martinez has litigated hundreds of similar cases in the last 20 years. ECF No. 17-1 at 3-5.

The undersigned finds that the named Plaintiffs are adequate class representatives, and that Mallison & Martinez may serve as class counsel.

2. Requirements Under Rule 23(b)(3)

A class action can only be maintained if it meets one of three criteria under Rule 23(b). One of these asks whether the questions of law or fact common to all class members predominate over questions affecting individual members, and whether a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Relevant considerations include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Id.

Defendant argues that even if there are common questions unifying the Global Class and each subclass (*see supra* III.1.b), there are individualized inquiries as to each class or subclass member. ECF No. 19 at 11. These include the hours each member worked, the hours they were paid for, the method of such payment, the duration of any non-productive work during shifts paid on a piece-rate basis, and each supervisor's practice regarding meal periods. ECF No. 19 at 11. As to the last of these, Defendant reiterates that the submitted declarations demonstrate that whether and to what extent Plaintiffs were pressured to work through their meal periods varied. *Id.* Defendant adds that the CVF Crew Sheets say nothing about which individuals spent how much time performing what work without compensation during piece-rate shifts. *Id.* at 12. This

means that the claim underlying the Minimum Wage Subclass is also not subject to common proof. *Id.*

As discussed above, the documentation of meal period violations in the CVF Crew Sheets and Ranch Reports creates a rebuttable presumption under *Donohue* that no meal period was provided. *See supra* III.1.b; ECF No. 17-2 at 15; 11 Cal.5th at 74-76. When opposing a motion to certify a meal break subclass, the employer in *McCollum v. TGI Fridays Inc.* argued that whether managers pressured employees to work through meal periods, as opposed to the workers voluntarily waiving them, was an individualized inquiry. *See* 2024 WL 5423064 at *10 (C.D. Cal. Mar. 6, 2024). Defendant cited declarations from twelve employees and eight managers asserting that employees regularly elect to forego meal breaks. *Id.* at *11. The court found that this was insufficient to rebut the *Donohue* presumption as to the proposed class of over 3,000 employees, particularly when employee time records showed that 99.3% of their shifts contained a non-compliant meal period. *Id.* at *10, *12. More importantly, the possibility of rebutting the presumption as to some employees at trial was insufficient to show that common questions of fact or law did not predominate under Rule 23(b)(3). *Id.* at *8, *12 (citing, *e.g., Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Food, LLC*, 31 F. 4th 651, 668 (9th Cir. 2022)). The same logic applies here, particularly as some declarants asserted they felt pressured to work through breaks rather than choosing to do so. *See, e.g.*, ECF No. 17-6 at 3-4, 25, 57.

Every other individualized inquiry that Defendant lists goes to damages, not the underlying merits, and therefore is inadequate to defeat commonality. *See supra* III.1.b; *Levya*, 716 F.3d at 513-14. Defendant does not provide any other reason for finding that a class action is not the optimal method of adjudicating this matter. The Court therefore finds that it is.

## IV. CONCLUSION

For the reasons above, the Court has found that the Global Class, as well as every subclass except the Underpaid Piece-Rate Rest Period Subclass, meets all applicable requirements under Fed. R. Civ. P. 23. Accordingly, **IT IS ORDERED THAT**:

1. Plaintiff's May 28, 2026 motion for class certification (ECF No. 17) is GRANTED IN PART:

2. The following classes and subclasses are certified pursuant to Rule 23(b)(3):

a. A "Global Class" defined as "All non-exempt agricultural employees employed by farm labor contractor Central Valley Farming who provided labor to Defendant Colligere at any time from June 26, 2020 to the present";

b. An "Unpaid Overtime Subclass" defined as "All non-exempt agricultural employees employed by farm labor contractor Central Valley Farming who provided labor to Defendant Colligere at any time from June 26, 2021 to the present and worked not paid earned overtime when they worked more than 5 days in a single workweek";

c. A "Short, Incomplete, or Missed Meal Period Subclass" defined as "All non-exempt agricultural employees employed by farm labor contractor Central Valley Farming who provided labor to Defendant Colligere at any time from June 26, 2020 to the present who worked at least one shift of 5 hours or greater";

d. A "Minimum Wage Subclass" defined as "All non-exempt agricultural employees employed by farm labor contractor Central Valley Farming who provided labor to Defendant Colligere at any time from June 26, 2020 to the present who were not compensated separately for nonproductive time, apart from rest periods, and therefore were not paid minimum for this unproductive time";

e. A "Final Wages Subclass" defined as "All non-exempt agricultural employees employed by farm labor contractor Central Valley Farming who provided labor to Defendant Colligere at any time from June 26, 2021 up to the present, who were not paid all wages due when they were laid off, discharged or quit as required by the California Labor Code"; and

f. A "Violation of Unfair Competition Law Subclass" defined as "All non-exempt agricultural employees employed by farm labor contractor Central Valley Farming who provided labor to Defendant Colligere at any time from

June 26, 2020 to the present who, due to the violations alleged in the subclasses, or because of unlawful deductions from their wages in violation of Labor Code § 221, were subject to unlawful or unfair business acts or practices";

3. Mallison & Martinez, Attorneys at Law, are appointed counsel for the certified class and subclasses.

DATED: October 28, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE